UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID J. RAY,                                                              **REPORT AND**
                                                                                       **RECOMMENDATION**
                              Plaintiff,

v.                                                                                    17-CV-00150-WMS-JJM

CITY OF TONAWANDA, MAYOR RICK
DAVIS, and WILLIAM STRASSBURG, II,
Chief of Police,

                              Defendants.
_____

          In this action, plaintiff David Ray seeks relief pursuant to 42 U.S.C. §1983 and the Americans with Disabilities Act (42 U.S.C. §12101 *et seq*.), claiming that defendants violated his constitutional and statutory rights in connection with his allegedly involuntary resignation from his position as a lieutenant with the with the defendant City of Tonawanda's Police Department pursuant to a "Last Chance Agreement". Amended Complaint [9][1].

          Before the court are the following: 1) the motion by defendant Davis (Mayor of the City of Tonawanda) pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) for dismissal of the Amended Complaint as to him for failure to state a claim for relief [12]; 2) the court's motion for partial summary judgment pursuant to Rule 56(f)(3) [19]; and 3) plaintiff's motion pursuant to Rule 15(a)(2) for leave to file a Second Amended Complaint [24].

          For the following reasons, I recommend that partial summary judgment be granted, that defendant Davis's motion to dismiss be denied as moot, and that plaintiff's motion for leave to amend be denied, without prejudice his ability to move for further amendment not inconsistent with this Report and Recommendation.

---

[1]     Bracketed references are to the CM/ECF docket entries.

## BACKGROUND

Plaintiff "has alleged a number of constitutional violations on the part of the City of Tonawanda. Many of those violations are codified in the form of the so-called 'last chance agreement'. As [the] Amended Complaint makes clear, the Defendant, Mayor Rick Davis, was the signatory of the so-called last chance agreement. If the last chance agreement is ultimately determined to be lawful, then he will not be liable. However, if, as Plaintiff alleges, it is unconstitutional, the Mayor is the signatory. He must defend himself for his act - his signature." Plaintiff's Memorandum of Law [15], pp. 5-6 of 9.

Although the "Last Chance Agreement" (dated July 18, 2016) was not attached to the Amended Complaint, a copy was later provided to me. At oral argument on May 10, 2017, counsel stipulated to the authenticity of the Agreement, and consented to its docketing as part of the record [18]. In relevant part, the Agreement provides:

- that plaintiff had "committed various acts of misconduct as an Employee of the City including, but not limited to events on March 11, 2016 which are detailed and included in [his] official personnel file" ([18], p. 1);

- that "based upon the foregoing misconduct, the City has good and sufficient cause for taking disciplinary action, up to and including termination" (id.);

- that "it is the intent of the City to prepare and serve charges in accordance with Section 75 of the Civil Service Law and the Collective Bargaining Agreement seeking [plaintiff's] termination" (id.);

- that plaintiff and his union "wish to forego service of said charges and a hearing thereon", in order "to avoid the possibility of termination and have a final opportunity to continue in the employ of the City" (id.);

- that plaintiff "was made fully aware of and understands that pursuant to the CBA [Collective Bargaining Agreement] and by law, he may be entitled to certain rights and due process of law" (id.);

- that "the parties desire to finally resolve all issues regarding [plaintiff]" (id.);

- that being "fully aware of his rights under the CBA and Section 75 of the Civil Service Law", plaintiff "knowingly and voluntarily waives all such rights relative to the alleged misconduct prior to the date of this Agreement" (id., p. 2, ¶1);

- that the "Agreement was, and is, knowingly, freely and voluntarily made without coercion, intimidation, duress, promise or threat of reprisal, either directly or indirectly; that he has read this Agreement and has had the opportunity to have the Agreement reviewed by an attorney; and that he is fully aware of the Agreement's contents and legal effect" (id., p. 4, ¶16);

- and, finally, that "the PBA [City of Tonawanda Police Benevolent Association] has fully and fairly represented him in connection with the incident on March 11, 2016 and the negotiation of the settlement agreement" (id., ¶17).

Having admitted that he signed the Agreement,[2] plaintiff "is presumed to know the contents of the instrument . . . and to have assented to such terms". Days Inns of America, Inc. v. Memorial Hospitality Corp., 1997 WL 782049, *1 (S.D.N.Y. 1997). "New York contract law presumes that a written agreement is valid and that it accurately reflects the intention of the parties, and imposes a heavy burden on the party seeking to disprove those presumptions." Aviall, Inc. v. Ryder System, Inc., 913 F. Supp. 826, 831 (S.D.N.Y. 1996), aff'd, 110 F.3d 892 (2d Cir. 1997).

Accordingly, on May 15, 2017 I issued an Order pursuant to Rule 56(f)(3) [19] inviting plaintiff to submit evidence rebutting the presumption that he agreed to the terms of the

---

[2]   See plaintiff's Memorandum of Law [24-1], pp. 3, 7 of 14.

Last Chance Agreement and that the Agreement is valid and enforceable. Instead of submitting his own Affidavit, plaintiff has submitted a Memorandum of Law [24-1] and the Affirmation of his attorney [24-2] seeking additional discovery. He also moves separately for leave to file a Second Amended Complaint [24, 24-3, 24-4].

## ANALYSIS

### A.   Are there Grounds to Consider the Last Chance Agreement?

Plaintiff argues that "there are no grounds to even consider the last chance agreement, which is the entire basis of converting this motion to dismiss to one for summary judgement", because neither plaintiff nor defendants rely upon its terms. Plaintiff's Memorandum of Law [24-1], pp. 6, 7 of 14. I disagree. Plaintiff's claims are based at least in part upon the Agreement. *See* Amended Complaint [9], ¶51 ("Mayor Davis, as the signatory of the 'Last Chance Agreement', deprived plaintiff of his property and liberty") and plaintiff's Memorandum of Law [15], pp. 5-6 of 9 ("Mr. Ray has alleged a number of constitutional violations on the part of the City of Tonawanda. Many of those violations are codified in the form of the so-called 'last chance agreement'"). *See also* defendants' Answer to Amended Complaint [11], ¶86 ("Plaintiff was terminated according to the provisions of a valid and enforceable Last Chance Agreement that plaintiff voluntarily agreed to").

In any event, I am not converting defendant Davis's Rule 12(b)(6) motion to a motion for summary judgment pursuant to Rule 12(d), but have instead initiated summary judgment proceedings on my own motion pursuant to Rule 56(f)(3), based on "material facts that may not be genuinely in dispute", namely the fact that plaintiff signed the Last Chance Agreement.

### B. Has Plaintiff Rebutted the Presumption that the Last Chance Agreement is Valid?

As previously noted, the Last Chance Agreement states that "the parties desire to finally resolve all issues regarding [plaintiff]" ([18], p. 1). "Stipulations of settlement are favored by the courts and not lightly cast aside." Hallock v. State, 64 N.Y.2d 224, 230 (1984). Plaintiff admits that "defendants are entitled to a basic presumption that there was no fraud in the creation of the last chance agreement if they initially prove authenticity of the signature on the document. If defendants prove that, they have made out a *prima facie* case" of validity. Plaintiff's Memorandum of Law [24-1], pp. 8-9 of 14.

That *prima facie* showing has been made: at oral argument counsel stipulated to the authenticity of the Last Chance Agreement, and plaintiff admits that he signed the Agreement. *See* plaintiff's Memorandum of Law [24-1], pp. 3, 7 of 14. Plaintiff recognizes that "[s]uch proof shifts the burden of going forward . . . to the adversary to show that there has been fraud, duress or some other fact which will be sufficient to avoid the release. Once this party puts in some *evidence*, the presumption is no longer in the case." Id., p. 8 of 14 (emphasis added, *quoting* Fleming v. Ponziani, 24 N.Y.2d 105, 110-11 (1969)).[3]

However, plaintiff has offered *no* evidence to rebut the presumptions that he agreed to the terms of the Last Chance Agreement and that the Agreement is valid. Although he "has alleged in his complaint fraud and duress" (plaintiff's Memorandum of Law [24-1], p. 9 of 14), the Complaint [1] has been superseded by the Amended Complaint [9], and is therefore "of no legal effect". Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994); Gliatta v. Stein, 2004

---

[3] Both federal and state law require evidence in order to rebut a presumption. *See* Fed. R. Evid. 301 ("the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption"); Kilburn v. Bush, 223 A.D.2d 110, 116 (4th Dept. 1996) ("a true presumption places the burden upon the adversary to come forward with evidence to rebut the presumption").

WL 1171714, *1, n. 2 (W.D.N.Y. 2004) (Skretny, J.) ("an amended complaint completely replaces and supplants any prior complaint").

In any event, "a plaintiff opposing summary judgment may not rely on his complaint to defeat the motion". Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996). Instead, he "must come forward with significant probative evidence in support of [his] factual allegations". Burns v. Imagine Films Entertainment, Inc., 2001 WL 34059379, *1 (W.D.N.Y. 2001) (Skretny, J.). "[A]llegations in a pleading are not evidence for summary judgment purposes." Rodriguez v. Kelly, 2009 WL 911085, *3 (S.D.N.Y. 2009), aff'd, 364 Fed. App'x 702 (2d Cir. 2010).

Even if the Amended Complaint could be considered evidence (and it is not), I find it significant that *nowhere* in that pleading (or, for that matter, in his proposed Second Amended Complaint [24-3]) does plaintiff dispute the Last Chance Agreement's recitation (to which he is presumed to have assented) that he committed misconduct which would give the City cause to terminate him. Although his attorney states that "[p]laintiff maintains that Defendant Strassburg never had legal grounds to seek plaintiff's termination" (Perry Affirmation [24-2], ¶9), plaintiff himself is silent in that regard. "[S]tatements of counsel are not evidence . . . evidence, not contentions, avoids summary judgment." E.E.O.C. v. CRST Van Expedited, Inc., 611 F. Supp. 2d 918, 954 (N.D. Iowa 2009).

Plaintiff argues that "it is inappropriate to convert a motion to dismiss into a motion for summary judgment when there has been no discovery" (plaintiff's Memorandum of Law [24-1], p. 6 of 14). However, "there is nothing in the Federal Rules of Civil Procedure precluding summary judgment - in an appropriate case - prior to discovery (citation omitted). Indeed, the clear language of Rule 56 allows [the motion] '*at any time*'." Thompson v. Combined Systems, Inc., 2017 WL 2546611, *3 (W.D.N.Y. 2017) (emphasis in original). "Because a summary judgment motion may

be quite limited, and be addressed to only a single claim or a single defense, or to only a single issue or element within a claim or defense, it may be fair to require a nonmovant to face a summary judgment quite early in a case, after little or no discovery." 11 Moore's Federal Practice, §56.100[1] (Matthew Bender 3d ed. 2017).

Having failed to submit evidence to rebut the presumptions (1) that he conceded the existence of just cause for his termination and (2) that the Last Chance Agreement is valid, plaintiff can avoid summary judgment only by demonstrating a legitimate need for discovery. He "seeks discovery to learn what, if any, justification Defendants have or had to threaten his termination", arguing that he "has never received any formal written charges". Perry Affirmation [24-2], ¶¶8, 11. However, a party seeking discovery in order to oppose summary judgment must "show that the delay in discovering the relevant evidence was the result of circumstances beyond [its] control". Moore's Federal Practice, §56.102[1]. Since plaintiff expressly agreed that defendants would "*forego* service of said charges and a hearing thereon" in order "to avoid the possibility of termination" ([18], p. 1) (emphasis added),[4] he has not made that showing. If plaintiff wanted to know (and contest) the charges, the time to do so was prior to signing the Agreement. *See* Hennigan v. Driscoll, 2009 WL 3199220, *9 (N.D.N.Y. 2009) ("resignations where the only alternative is termination may be found voluntary because the employee in fact has a choice: resign or stand pat and fight").

If plaintiff or his union[5] believed that he lacked adequate information as to the nature of the misconduct referred to in the Agreement, he accepted that risk by signing the Agreement.

---

[4] N.Y. Civil Service Law §75 provides that an employee "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section".

[5] Plaintiff was represented by the Police Benevolent Association "in connection with the incident on March 11, 2016 and the negotiation of the settlement agreement". [18], ¶17.

"[A] party bears the risk of mistake when he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274, 320 (S.D.N.Y. 2013); Restatement (Second) of Contracts, §154, comment c. He cannot now seek discovery so as to reconsider the choice he made. See Cole-Hoover v. New York Department of Correctional Services, 2013 WL 5652751, *5 (W.D.N.Y. 2013) ("[i]n the litigation process, when certain moments have passed, district courts are not required to give parties a 'do over'").

Where (as here) the party against whom a presumption operates "offers no evidence contesting the presumed fact . . . the presumption controls and the trier must find the presumed fact as a matter of law". 1 Mueller, Kirkpatrick, Federal Evidence §3:10 (4th ed.). *See also* Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981) ("if the [opponent] is silent in the face of the presumption . . . no issue of fact remains"); Apex Inc. v. Raritan Computer, Inc., 325 F.3d 1364, 1372 (Fed. Cir. 2003) ("[i]f the party who must bring forth evidence fails to proffer sufficient evidence to meet its burden, the presumption . . . prevails"); Roth v. City of Syracuse, 21 N.Y.3d 411, 419 (2013) ("petitioner failed to meet his burden and there is no basis to disturb the presumption").

Therefore, the unrebutted presumption that plaintiff had engaged in misconduct justifying his termination from employment ([18], p. 1) is fatal to his claim that "the threat of termination was the coercion which compelled [him] to sign the illegal document" (plaintiff's Memorandum of Law ([24-1]), p. 13 of 14).[6] "It is not duress to threaten to take action which is

---

[6]    Plaintiff elsewhere argues that he was also coerced in to signing the Agreement "through the threat of . . . incarceration". Plaintiff's Memorandum of Law [24-1], p. 7 of 14. However, the Amended Complaint alleges only that plaintiff was compelled to submit to a mental health examination by threat of incarceration at ECMC ([9], ¶¶15-16), not that he was coerced into signing the Agreement by threat of incarceration. The Amended Complaint lists only three reasons for repudiating the Agreement (*see* [9], ¶¶33(a-c)), and does not

legally permissible." United States v. Twenty Miljam-350 IED Jammers, 669 F.3d 78, 89 (2d Cir. 2011). For example, although plaintiff quotes Stewart M. Muller Construction Co. v. New York Telephone Co., 40 N.Y.2d 955, 956 (1976) for the proposition that "[a] contract may be voided on the ground of economic duress where the complaining party was compelled to agree to its terms by means of a wrongful threat which precluded the exercise of its free will" (plaintiff's Memorandum of Law [24-1], p. 11 of 24), he fails to mention that in that case the court *rejected* the duress claim because the plaintiff failed to demonstrate "that the defendant was not within its contractual rights in threatening to exercise the termination clause". 40 N.Y.2d at 956.

In any event, to prevail on a duress claim plaintiff must also "show that his acceptance of the contract terms was involuntary because the circumstances permitted no other alternative". Twenty Miljam, 669 F.3d at 89. Here, however, plaintiff *had* an alternative: he could "stand pat and fight" (Hennigan, 2009 WL 3199220, *9) by contesting the charges before an impartial hearing officer in a proceeding under N.Y. Civil Service Law §75. McLean v. City of Albany, 13 A.D.3d 851, 852 (3d Dept. 2004). That factor distinguishes this case from Garrity v. State of New Jersey, 385 U.S. 493 (1967), upon which plaintiff relies (plaintiff's Memorandum of Law [24-1], p. 11 of 14).

Garrity involved in an investigation into the fixing of traffic tickets by police. Police officers were warned that if they invoked their Fifth Amendment right to refuse to answer questions in connection with the investigation, they would be terminated from employment (385 U.S. at 494, n. 1). The Court reasoned that "[t]he option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent . . . . [T]he coercion inherent in this scheme of questioning . . . cannot be sustained as voluntary". Id., pp. 497-98.

---

include the alleged threat of incarceration among them. In any event, plaintiff submits no *evidence* that either the threat of termination or the threat of incarceration caused him to sign the Agreement.

Here, by contrast, plaintiff's exercise of his rights under N.Y. Civil Service Law §75 would not have resulted in his automatic termination from employment - instead, defendants would have had to prove misconduct justifying his termination. See McIntyre v. New York City Department of Correction, 411 F. Supp. 1257, 1259 (S.D.N.Y. 1976) ("[t]he burden of proof rests upon the person asserting the misconduct").

Finally, plaintiff argues that "it is federal law, not state law, which controls" the validity of the Last Chance Agreement. I disagree. "[T]he interpretation and validity of a contract is governed by the law of the jurisdiction which is the 'center of gravity' of the transaction." Alderman v. Pan Am World Airways, 169 F.3d 99, 103 (2d Cir. 1999). Since the Last Chance Agreement was executed and to be performed in New York, New York law governs its validity. Under New York law, "[p]arties may . . . agree to give up statutory or constitutional rights in a contract, as long as public policy is not violated". Corwin v. NYC Bike Share, LLC, ___F. Supp.3d___, 2017 WL 816134, *9 (S.D.N.Y. 2017) (quoting J. D'Addario & Co. v. Embassy Industries, Inc., 20 N.Y.3d 113, 119 (2012)).

If plaintiff believes that federal law would compel a different result, he is mistaken. See D.H. Overmyer Co. Inc., of Ohio v. Frick Co., 405 U.S. 174, 185 (1972) ("due process rights to notice and hearing . . . are subject to waiver"); Town of Newton v. Rumery, 480 U.S. 386, 393 (1987) ("plea bargaining does not violate the Constitution even though a guilty plea waives important constitutional rights"); Doe v. Marsh, 105 F.3d 106, 111 (2d Cir. 1997) ("an individual may waive constitutional rights in a consent decree"); Salaam v. Giambruno, 559 F. Supp. 2d 292, 297 (W.D.N.Y. 2008) ("[g]iven that a defendant may waive constitutional rights as part of a plea agreement . . . it follows logically that a defendant ought to be able to waive rights that are purely creatures of statute").

Although my Rule 56(f)(3) Order called for defendants to respond to plaintiff's submission, since plaintiff has failed to submit evidence rebutting the presumption that the Last Chance Agreement is valid, I conclude that no response is necessary - and for the reasons discussed, I conclude that the Last Chance Agreement is valid and enforceable.

### C. Should the Amended Complaint be Dismissed As to Defendant Davis?

In opposing defendant Davis's motion to dismiss, plaintiff stated that "the Mayor took an overt act to effectuate this 'last chance agreement'. If the last chance agreement is ultimately determined to be lawful, then he will not be liable". Plaintiff's Memorandum of Law [15], p. 5 of 9. In light of that admission, and having concluded that the Last Chance Agreement is valid and enforceable, I recommend that defendant Davis be granted summary judgment dismissing the Amended Complaint as to him.

Moreover, since the Last Chance Agreement appears to resolve all claims between the parties arising prior to its execution, in the event that this Report and Recommendation is adopted I invite the remaining defendants to move for summary judgment dismissing those claims. See Ramirez v. Elgin Pontiac GMC, Inc., 187 F. Supp. 2d 1041, 1047 (N.D. Ill. 2002) ("the court may invite a motion for summary judgment if a claim appears implausible"); University of Pittsburgh v. Lexington Insurance Co., 2016 WL 3963104, *4 (S.D.N.Y. 2016) ("[t]he Court invites a dispositive motion for summary judgment from Lexington").

### D. Should Plaintiff be Allowed to File the Proposed Second Amended Complaint?

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court." Foman v. Davis, 371 U.S. 178, 182 (1962). In moving for leave to file a Second Amended Complaint, plaintiff admits that the court may "refus[e] such amendments where an amendment would be futile". Plaintiff's Memorandum of Law [24-1], p. 5 of 14. See O'Hara v.

- 11 -

Weeks Marine, Inc., 294 F.3d 55, 69 (2d Cir. 2002) ("a district court may deny leave to amend the complaint if the amendment would be futile").

Plaintiff's proposed Second Amended Complaint continues to allege that the Last Chance Agreement is invalid, and that defendant Davis is liable for signing that agreement. *See*, *e.g*., [24-3], ¶¶35, 102. However, if my recommendations for partial summary judgment are adopted, those claims are foreclosed. "[A] court ordinarily will be reluctant to allow leave to amend to a party against whom summary judgment has been entered, especially in the absence of a showing that the defect that gave rise to the grant of the motion will not affect the new pleading." 10A Wright, Miller, Kane, *et al*., Federal Practice & Procedure (Civil), §2712 (4th ed.). Thus, "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to . . . raise triable issues of fact". AEP Energy Services Gas Holding Co. v. Bank of America, N.A., 626 F.3d 699, 726 (2d Cir. 2010); Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).

Therefore, I recommend that plaintiff's motion for leave to file the proposed Second Amended Complaint [24, 24-3] be denied, without prejudice to his ability to seek an amendment which is consistent with the validity and enforceability of the Last Chance Agreement.

## CONCLUSION

For the foregoing reasons, I recommend: 1) that partial summary judgment be granted pursuant to Rule 56(f)(3) declaring the Last Chance Agreement to be valid and enforceable, and dismissing the Amended Complaint as to defendant Davis; 2) denying defendant Davis's motion to dismiss [12] as moot; and 3) denying plaintiff's motion for leave to file a Second Amended Complaint [24], without prejudice to his ability to move for a further amendment consistent with this Report and Recommendation.  Unless otherwise ordered by Judge Skretny, any

objections to this Report and Recommendation must be filed with the clerk of this court by August 30, 2017.

Any requests for extension of this deadline must be made to Judge Skretny. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: August 16, 2017

                                                       /s/ Jeremiah J. McCarthy
                                                      JEREMIAH J. MCCARTHY
                                                      United States Magistrate Judge