UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DAVID J. RAY,

                Plaintiff,

v.

CITY OF TONAWANDA, MAYOR RICK DAVIS, and WILLIAM STRASSBURG, II, Chief of Police,

                Defendants.

**DECISION AND ORDER**

17-CV-00150 (WMS)(JJM)

---

Familiarity with my August 16, 2017 Report and Recommendation [28],[1] subsequently adopted by District Judge William Skretny [35], is presumed. Before the court is plaintiff's motion for leave to file a Second Amended Complaint [39], which was orally argued before me on February 21, 2018 [44]. Having reviewed the parties' submissions [39, 41, 43], for the following reasons, the motion is granted.[2]

---

[1] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2] "While there has been conflicting views on the issue expressed by the district courts in the past, there is a general consensus that the granting of a motion to amend is considered nondispositive." Salgado v. NYS Department of Corrections and Community Supervision, 2016 WL 6311296, *2 n. 5 (W.D.N.Y.), adopted, 2016 WL 6298517 (W.D.N.Y. 2016); Youngman v. Robert Bosch LLC, 923 F.Supp.2d 411, 414 n. 1 (E.D.N.Y. 2013) ("it is apparent that permitting an amendment cannot dispose of a claim or defense", and as such, is considered non-dispositive).

## DISCUSSION

### A. Is the Proposed Second Amended Complaint Consistent with the Last Chance Agreement?

Having concluded in my August 16, 2017 Report and Recommendation that the July 18, 2016 Last Chance Agreement "is valid and enforceable" ([28], p. 11), I recommended "that plaintiff's [prior] motion for leave to file a Second Amended Complaint [24, 24-3] be denied, without prejudice to his ability to seek an amendment which is consistent with the validity and enforceability of the Last Chance Agreement". [28], p. 12. Therefore, the initial question is whether plaintiff's proposed Second Amended Complaint [39-3] is consistent with that Agreement.

The proposed Second Amended Complaint includes allegations seeking relief for events occurring prior to the execution of the Last Chance Agreement on July 18, 2016, such as plaintiff's submission to a mental health examination on March 11, 2016. [39-3], ¶¶14, 72, 80, 91, 98, 112. In opposing the motion, defendants argue that "[p]laintiff resolved any issues he had with the City or Chief Strassburg prior to July 18, 2016 when he executed and entered into the [Last Chance Agreement]. See id. ('WHEREAS the parties desire to finally resolve all issues regarding Employee.'). Accordingly, the [Last Chance Agreement] precludes Plaintiff from asserting any claims based on facts occurring prior to July 18, 2016, in particular, acts surrounding events that occurred on or about March 11, 2016". Defendants' Memorandum of Law [41], p. 7.

The language of the "Whereas" clause certainly appears to support that contention: "finally" means "for all time : beyond change : irrevocably : conclusively : decisively" (Webster's Unabridged Third New International Dictionary (2002)), and "'all' means what it states - 'all' . . . . It thus is taken to mean all-inclusive or without exception". United

States v. Allstate Insurance Co., 2014 WL 10748104, *5 (W.D.N.Y. 2014), adopted, 2016 WL 463732 (W.D.N.Y. 2016), aff'd, 686 Fed. App'x 23 (2d Cir. 2017). However, plaintiff points out that "Defendants reference clauses of intent twice but ignore that the [Last Chance Agreement]'s waiver only specifically recites Civil Service Law §75 . . . and not Civil Service Law §72 which is Plaintiff's allegation". Plaintiff's Memorandum of Law [43], p. 3.

Plaintiff may well be correct. "The recitals in a contract form no part thereof, and at most indicate but the purposes and motives of the parties." Ross v. Ross, 233 A.D. 626, 635 (1st Dept. 1931), aff'd, 262 N.Y. 381 (1933). They "may shed light on, but are distinct from, the contract's operative promises to perform." United States v. Hamdi, 432 F.3d 115, 123 (2d Cir. 2005). Thus, while "a statement in a 'whereas' clause may be useful in interpreting an ambiguous operative clause in a contract, it cannot create any right beyond those arising from the operative terms of the document". Aramony v. United Way of America, 254 F.3d 403, 413 (2d Cir. 2001).

As plaintiff points out, "waiver should not be lightly presumed . . . . Moreover, the burden of proving a defense of waiver is on the party which asserts it". Plaintiff's Memorandum of Law [43], p. 3. Although my August 16, 2017 Report and Recommendation stated that "the Last Chance Agreement *appears* to resolve all claims between the parties arising prior to its execution" ([28], p. 11, emphasis added), I did not actually decide that question at the time. Instead, I "invite[d] the remaining defendants to move for summary judgment dismissing those claims" (id.), but thus far no such motion has been made. Therefore, I do not yet decide whether any claims arising prior to the execution of the Last Chance Agreement can survive, and conclude only that the allegations of the proposed Second Amended Complaint [39-3] are not necessarily inconsistent with the Last Chance Agreement.

Defendants next argue that the "proposed amendments would be subject to dismissal on a motion brought pursuant to [Fed. R. Civ. P. ("Rule")] 12(b)(6) and are thus futile". Defendants' Memorandum of Law [41], p. 2. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Therefore, I must decide whether plaintiff's proposed allegations are "plausible".

### B. Does the Proposed Second Amended Complaint Plausibly Allege Claims for Relief?

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

#### 1. First, Second and Third Causes of Action

These causes of action allege discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 et seq., the New York State Human Rights Law ("NYHRL"), N.Y. Executive Law §296, et seq., and the Rehabilitation Act of 1973, 29 U.S.C. §794 et seq. The burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973), governs these claims. See Schratz v. Potter, 2008 WL 5340992,

*7 (W.D.N.Y. 2008). Under that framework, a plaintiff must first establish a *prima facie* case of discrimination by showing, *inter alia*, that he "suffered an adverse employment action" and "the circumstances give rise to an inference of discrimination". Vega v. Hempstead Union Free School District, 801 F.3d 72, 83 (2d Cir. 2015).

Defendants argue that plaintiff's discrimination claims "fail because he does not allege that he suffered an adverse employment action because of his perceived disability". Defendants' Memorandum of Law [41], p. 8. I disagree: the proposed Second Amended Complaint [39-3] alleges that "plaintiff suffered adverse actions. . . based on [his] perceived disability as [he] was directed to submit to unnecessary mental health examination (*sic*), otherwise harassed, suspended, terminated, and had his family subjected to harassment". Id., ¶¶72, 80.

Defendants also argue that plaintiff's allegation that he was directed to submit to an "unnecessary mental health examination and was suspended cannot form the basis of his employment discrimination claim because [this conduct] occurred prior to [the Last Chance Agreement] and were fully resolved" by it. Defendants' Memorandum of Law [41], p. 9. However, as previously discussed, it is not clear that the Last Chance Agreement resolved this claim.

In any event, plaintiff alleges that he sustained other adverse employment actions. For example, the proposed Second Amended Complaint [39-3] alleges that plaintiff was initially terminated on October 28, 2016. Id., ¶30. Defendants do not dispute that plaintiff's terminations were adverse employment actions. Instead, they argue that plaintiff "concedes in the Proposed Second Amended Complaint that his termination was the result of perceived misconduct in violation of the" Last Chace Agreement. Defendants' Memorandum of Law [41], p. 10 (*citing*

[39-3], ¶¶30-31, 43, 53). I disagree. While that was the purported reason given by defendants for his termination (proposed Second Amended Complaint [39-3], ¶¶30, 43), plaintiff alleges that it was ultimately determined that he "had not engaged in misconduct on October 21, 2016 as defined by the [Last Chance Agreement] and as alleged by Defendant Strassburg", and that the "misconduct allegation was a deviation from normal procedure". Id., ¶¶64, 65. While defendants will have an opportunity to challenge these allegations, they are sufficient at this stage to permit the amendment.

### 2. Fourth, Fifth and Sixth Causes of Action

These causes of action, which allege retaliation under the ADA, NYHRL, and Rehabilitation Act, are also governed by the McDonnell Douglas burden-shifting framework. *See* McGuire-Welch v. House of the Good Shepherd, 720 Fed. Appx. 58, 59, 62 (2d Cir. 2018) (Summary Order). For plaintiff to meet his *prima facie* burden, he must to show that "(1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." Zann Kwan v. Andalex Group, LLC, 737 F.3d 834, 844 (2d Cir. 2013). The burden of establishing a *prima facie* case is "minimal". Id.

Defendants argue that plaintiff's proposed retaliation claims are futile, since he fails to meet any element of his *prima facie* case. Defendants' Memorandum of Law [41], pp. 12-18. I will address each of the elements.

### a. Protected Activity and Knowledge of that Activity

Defendants concede that the filing of the Verified Complaint in this action "is arguably a protected activity". Defendants' Memorandum of Law [41], p. 13. *See* Dhar v. City of New York, 655 Fed. App'x 864, 865 (2d Cir. 2016) (Summary Order) ("Dhar alleged that he suffered retaliation for filing complaints against defendants in federal court . . . . [T]his is a protected activity"). Instead, they argue that since the Verified Complaint "only implicated the ADA", plaintiff is precluded from alleging retaliation under the NYHRL or Rehabilitation Act. Defendants' Memorandum of Law [41], pp. 13-14.

"Protected activities include oppos[ing] an act or practice of discrimination based upon race, color, religion, sex, national origin, age or disability". Herbert v. Delta Airlines, 2014 WL 4923100, *4 (E.D.N.Y. 2014). Although "[g]eneralized complaints about the workplace do not qualify as a protected activity", anything that an "employer could reasonably have understood . . . was complaining about . . . discrimination" constitutes a protected activity. Deuel v. Town of Southhampton, 2015 WL 4394085, *8 (E.D.N.Y. 2015).

While the Verified Complaint [1] characterized the alleged conduct as violating the ADA, the disability discrimination alleged is similarly prohibited by the NYHRL and Rehabilitation Act. *See* Sussle v. Sirina Protection Systems Corp., 269 F. Supp. 2d 285, 303 n.3 (S.D.N.Y. 2003) ("[t]he Rehabilitation Act prohibits the same type of disability discrimination as the ADA"); Primmer v. CBS Studios, Inc., 667 F. Supp. 2d 248, 261 (S.D.N.Y. 2009) ("[l]ike the ADA . . . the NYSHRL . . . forbid[s] employers to discharge or change the conditions of employment of an employee because of a disability"). Therefore, I conclude that the initiation of this action constituted a protected activity for purposes of plaintiff's retaliation claims under the NYHRL and Rehabilitation Act, and that defendants knew of that activity.

### b. Adverse Employment Action and Causal Connection

While defendants do not appear to dispute that plaintiff's August 18, 2017 termination constitutes an adverse employment action, they argue that the temporal proximity between his February 17, 2017 Verified Complaint [1] and August 18, 2017 termination is too attenuated to establish an inference of causation. Defendants' Memorandum of Law [41], pp. 16, 18. I disagree. *See* Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (the passage of six months between the protected activity and adverse action was sufficient to support an inference of a causal connection); Bentivegna v. People's United Bank, 2017 WL 3394601, *22 (E.D.N.Y.), reconsideration granted on other grounds, 2017 WL 4277149 (E.D.N.Y. 2017) ("[w]hile there is no bright line establishing how far removed an adverse employment action must be taken after a protected activity to no longer raise an inference of discrimination, the Court finds that the passing of eight months here does not destroy the inference of retaliation").

Relying on the Affidavit of defendant Strassburg [41-2], defendants also argue that any inference of causation is dispelled by the fact that plaintiff August 18, 2017 termination was the result of violating the Last Chance Agreement. Defendants' Memorandum of Law [41], p. 18. However, "whether the evidence supports Plaintiff's claims is irrelevant to the futility of granting him leave to amend. . . . The only pertinent consideration is the legal sufficiency of the new allegations, not whether they are factually disputed". Faraj v. 6th & Island Investments LLC, 2016 WL 5338073, *2 (S.D. Cal. 2016).

Moreover, plaintiff notes (plaintiff's Reply Memorandum of Law [43], p. 9) and defendants fail to dispute that the April 13, 2017 Statement of Disciplinary Charges filed against him (proposed Second Amended Complaint [39-3], ¶43) also constitutes an adverse employment action. *See* Monclova v. City of New York, 2008 WL 822117, *7 (E.D.N.Y. 2008) (the

"disciplinary charges against plaintiffs are . . . an adverse employment action for the purpose of making out a *prima facie* case of retaliation"); Chapman v. City of New York, 2011 WL 1240001, *6 (E.D.N.Y. 2011) ("[i]t is well-settled that disciplinary charges are considered adverse employment actions satisfying the third prong of McDonnell Douglas"); Broich v. Inc. Village of Southampton, 462 Fed. App'x 39, 47 (2d Cir. 2012) (Summary Order) ("the initiation of disciplinary charges leading to an administrative hearing permitting 'suspension with pay and carr[ying] with it the threat of possible termination' constitutes adverse employment action"); Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir. 2004) (disagreeing with the district court's conclusion that the maintenance of disciplinary charges did not constitute an adverse employment action where the charges against plaintiffs were dismissed after a hearing, and any loss of pay suffered by plaintiffs was reinstated).

The temporal proximity between the commencement of this action the filing of disciplinary charges approximately two months later is also sufficient to establish a causal connection for purposes of plaintiff's *prima facie* case of retaliation. *See* Espinal, 558 F.3d at 129; Bentivegna, 2017 WL 3394601 at *22. Therefore, I conclude that these claims are not futile.

### 3. Seventh Cause of Action

Plaintiff's Seventh Cause of Action alleges that defendant Strassburg denied him "his right to due process by ordering [him] to obtain a mental health examination, placing [him] on sick leave, and depriving [him] of his remedies under the Civil Service Law", in violation of 42 U.S.C. §1983. Proposed Second Amended Complaint [39-3], ¶91. Defendants argue that this claim is futile since the Last Chance Agreement "fully resolved the due process issues of which

he complains". Defendants' Memorandum of Law [41], pp. 18-19. For the reasons discussed above, I am unable to conclude as a matter of law that the claim, which broadly alleges that defendant Strassburg deprived plaintiff of remedies under the Civil Service Law (and not just S Civil Service Law §75) would be subject to dismissal under Rule 12(b)(6).

### 4. Eighth through Sixteenth Causes of Action

Plaintiff's proposed Eighth through Thirteenth Causes of Action allege that defendants Strassburg (Eighth, Ninth and Tenth) and Balling (Eleventh, Twelfth, and Thirteenth), acting under color of state law, deprived plaintiff of his right to be free from discrimination under the ADA, NYHRL, and Rehabilitation Act, in violation of 42 U.S.C. §1983. Likewise, the Fourteenth through Sixteenth Causes of Action allege that defendant Strassburg, acting under color of state law, deprived plaintiff of his rights to be free from retaliation under the ADA, NYHRL, and Rehabilitation Act, in violation of 42 U.S.C. §1983.

Characterizing these causes of action as "alleging discrimination in violation of the ADA, HRL and Rehab. Act", defendants argue that plaintiff is unable to maintain these causes of action since neither the ADA or Rehabilitation Act provide for individual liability and the municipality is the real party in interest for the ADA and Rehabilitation Act claims asserted against defendants in their official capacities. Defendants' Memorandum of Law [41], pp. 19-20. However, as plaintiff notes, defendants mischaracterize his claims and "offer no opposition to the articulation of the claims made under §1983". Plaintiff's Reply Memorandum of Law [43], p. 5. While there may be arguments as to why these §1983 claims fail (in whole or in part) as a matter of law, they have not been raised by defendants. Therefore, I conclude that these claims are not futile.

## CONCLUSION

For these reasons, plaintiff's motion for leave to amend [39] is granted. The Second Amended Complaint [39-3] shall be filed by May 25, 2018.

Dated: May 21, 2018

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge